UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| GOVERNMENT EMPLOYEES INSURANCE COMPANY, | Case No. 19-cv-01302-LB |
|---|---|
| Plaintiff, | **ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |
| v. | |
| ANSHUMAN S. NADKARNI, et al., | Re: ECF No. 7 |
| Defendants. | |

**INTRODUCTION**

The plaintiff Government Employees Insurance Company ("GEICO") brought this declaratory-relief action to determine whether its insurance policy — issued to the defendants Anshuman and Renuka Nadkarni, who are former landlords facing a state-court wrongful-eviction lawsuit brought by their former tenants — requires it to defend and indemnify the Nadkarnis.[1] The defendants move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on the ground that GEICO has a duty to defend it as a matter of law, and GEICO counters that under the policy, it has no duty to defend or indemnify.[2] The court denies the defendants' motion for judgment on the pleadings.

---

[1] First Am. Compl. ("FAC") – ECF No. 7. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. − ECF No. 8 at 4; Opp. − ECF No. 18 at 23.

ORDER – No. 19-cv-01302-LB

**STATEMENT**

**1. The Insurance Policy**

On May 9, 2018, GEICO issued Personal Umbrella Policy number P8345980 to the defendants for the policy period May 8, 2018 to May 8, 2019, "which was cancelled effective December 28, 2018" (hereinafter the "GEICO policy" or "policy").[3] The policy limit was "$1 million above the minimum required underlying limit of primary liability insurance in the amount of $300,000, and also subject to a 'retained limit' of $500."[4]

"Under the terms of the GEICO policy, GEICO promises to pay 'damages' on behalf of an 'insured' arising out of an 'occurrence,'[5] subject to the terms and conditions of this policy."[6] The policy defines "damages" (in relevant part) as the "'the total of: damages an "insured" must pay (1) legally; or (2) by agreement with "our" written consent; because of "personal injury" or "property" damage covered by this policy.'"[7] Under the "Conditions" section of the policy, the policy "'applies to "personal injury" or "property damage" which takes place anywhere during the time this policy is in force, provided that suit is brought in the United States, its territories and possessions, or Canada.'"[8] The policy's definition of "personal injury" includes "wrongful eviction." The excerpt of the policy is as follows:

> 10. *Personal injury* means:
>
>     (a) mental or bodily injury, shock, sickness, disease or death including care and loss of services; or

---

[3] FAC − ECF No. 7 at 2 (¶ 8) & Ex. A.

[4] *Id.* at 2 (¶ 9). Under the policy, the "*[r]etained limit* is the amount of any *damages* an *insured* must pay for any *occurrence* resulting in *personal injury* or *property damage* which is not covered by *your primary insurance*." Policy, Ex. A to FAC – ECF No. 7 at 22 (¶ 9).

[5] "Occurrence" is defined as "an accident or event, including a continuous or repeated exposure to conditions which results in *personal injury* or *property damage* neither expected or intended by an *insured*. For the purpose of determining the limit of liability, continuous or repeated exposure to substantially the same harmful conditions, during the policy period, which results in *personal injury* and/or *property damage* shall be considered as arising out of one *occurrence*." *Id.* at 21 (¶ 4).

[6] FAC − ECF No. 7 at 2 (¶ 10).

[7] *Id.* (quoting the policy).

[8] *Id.* (quoting the policy).

    (b) injury arising out of:

      (i) false arrest, false imprisonment, wrongful eviction, wrongful detention or malicious prosecution; or

      (ii) libel, slander, defamation of character or invasion of rights of privacy that does not arise out of any one or more of the following:

        (A) any ***business*** of an ***insured***; or

        (B) oral, written or other publication of material by or at the direction of an ***insured*** with knowledge of its falsity; or

        (C) oral or written publication of material that was first published before the beginning of the policy period.[9]

Under the policy, "***Property damage*** means physical injury or destruction of tangible property. This includes the loss of use caused by the injury or destruction. ***Property damage*** does not include the loss of money, notes, stock, bonds, or similar instruments, computer data or intellectual property."[10]

In the section titled "Defense of Suits Not Covered by Other Insurance," the policy states in relevant part, "[i]f the required 'primary insurance' [] is in force but does not cover 'personal injury' or 'property damage' due to the nature of the claim against 'you', and this policy does provide coverage, 'we' will provide defense of suits in excess of the 'retained limit'."[11]

## 2. The State Unlawful-Eviction Lawsuit

In 2017, the defendants bought a residential property that was rented to tenants, who had lived there since 2008 and who had a written lease with the previous owner through April 21, 2018.[12] On March 13, 2018, the defendants served the tenants with a "60 Day Notice of Termination of Tenancy," which "'provided that [the Nadkarni defendants] would be moving into the Subject

---

[9] *Id.* (¶ 11).

[10] *Id.* (¶ 12).

[11] FAC – ECF No. 7 at 3 (¶ 13); Policy, Ex. A to FAC – ECF No. 7 at 26 (¶ 1(a)).

[12] FAC – ECF No. at 4 (¶ 15); State Compl. – ECF No. 7 at 35–36 (¶¶ 1, 5).

ORDER – No. 19-cv-01302-LB     3

Unit and that [the third-party claimants] must vacate.'"[13] According to the state complaint, the former tenants vacated the unit on April 21, 2018.[14] In November 2018, three former tenants sued the defendants for wrongful eviction on the ground that the defendants never moved into the property within three months (and did not thereafter stay for three years or offer it back to the tenants), which was the legal ground that allowed eviction.[15]

The operative state complaint was filed on February 28, 2019, and has the following claims: (1) negligence (by demanding that the tenants vacate the property for an owner move-in and failing to move in) (resulting in serious emotional distress, property damage, property loss, loss of a rent-controlled apartment, and moving costs); (2) wrongful eviction in violation of the San Francisco Rent Ordinance (resulting in the same damages); (3) breach of the covenant of quiet enjoyment (resulting in the loss of a rent-controlled apartment, property damage, property loss, moving costs, and attorney's fees and costs); (4) intentional infliction of emotional distress (resulting in severe emotional distress, mental injury, moving costs, and lose of use and enjoyment of the rental home); (5) a violation of section 37.11A of the San Francisco Rent ordinance by not filing required documents (such as a statement of occupancy within 90 days and updated statements every 90 days thereafter, the notice to vacate, and the notice of termination of tenancy) and by failing to move into the property (resulting in loss of enjoyment of a rent-controlled unit, property damage, property loss, mental injury, emotional distress, statutory damages and penalties, attorney's fees, and litigation costs); (6) unfair business practices in violation of Cal. Bus. & Code Prof. § 17200 by (essentially) the wrongful eviction and the failure to file the documents in violation of the Rent Ordinance, resulting in illegal profits; and (8) as to one former tenant, financial elder abuse warranting punitive damages.[16]

---

[13] FAC – ECF No. at 4 (¶ 16); Notice, Ex. A to Nadkarni Decl. − ECF No. 8-2. The court considers the Notice under the incorporation-by-reference doctrine. *Knievel v. ESPN,* 393 F.3d 1068, 1076–77 (9th Cir. 2005).

[14] FAC – ECF No. at 4 (¶ 16).

[15] *Id.* (¶ 17) (move in within three months and live there for three years or offer the property back to the former tenants at the former rate, less any allowable increase).

[16] State First Amended Complaint – ECF No. 7 at 125−130 (¶¶ 24−74).

### 3. Tender by the Defendants; Coverage Investigation; Response to Tender

On November 12, 2018, defendant Renuka Nadkarni (on behalf of all of the defendants), tendered the summons and complaint from the state unlawful-eviction action to GEICO for a defense and indemnity under the GEICO policy and advised (in an email) that "(1) 'On 16th March [2018] a letter of Eviction was sent to the tenant with 60 days termination notice'; and (2) 'We took possession of the unit starting May [2018]'."[17]

GEICO conducted a coverage investigation, which the complaint synopsizes as follows.[18]

> 24. In connection with its coverage investigation, GEICO obtained a copy of three "Statement[s] of Occupancy filed on behalf of the Nadkarni defendants with the San Francisco Residential Rent Stabilization and Arbitration Board. . . .
>
> a. The "Statement of Occupancy" filed on June 11, 2018 on behalf of the Nadkarni defendants indicates that the notice to vacate the Subject Premises was served on the third-party claimants on "3/16/18" and that the Nadkarni defendants "recovered possession" of the Subject premises on "5/1/2018."
>
> b. The "Statement of Occupancy" filed on November 8, 2018 [on behalf of] the Nadkarni defendants indicates that the notice to vacate the Subject Premises was served on the third-party claimants on "3/16/18" and that the Nadkarni defendants "recovered possession" of the Subject premises on "5/1/2018."
>
> c. The "Statement of Occupancy" filed on November 16, 2018 [on behalf of] the Nadkarni defendants indicates that the notice to vacate the Subject Premises was served on the third-party claimants on "3/16/18" and that the Nadkarni defendants "recovered possession" of the Subject premises "on 30th April 2018.
>
> 25. GEICO concluded from the allegations in the [state-court] Complaint . . . as confirmed by all information which was provided by the Nadkarni defendants and which was obtained from the San Francisco Rent Stabilization and Arbitration Board that the Nadkarni defendants' exposure to liability in the [state-court] action does not present any potential liability for "personal injury" consisting of "wrongful eviction" covered by the GEICO policy which took place "during the time this policy is in force." Rather, all undisputed information provided to GEICO indicates that any "personal injury"' consisting of "wrongful eviction" allegedly suffered by the third-party claimants occurred prior to the May 8, 2018 inception of coverage under the GEICO policy either: (1) on March 16, 2018, when the third-party tenants were served a Notice of Termination of Tenancy by the Nadkarni defendants with respect to the Subject Property; (2) on April 28, 2018, when the third-party claimants vacated the Subject Property; or (3) on April 30, 2018 or May 1, 2018, when the Nadkarni defendants recovered possession of the Subject Property

---

[17] FAC – ECF No. 7 at 5 (¶¶ 22–23) (alterations in original).

[18] *Id.* at 5–6 (¶ 24).

ORDER – No. 19-cv-01302-LB          5

> 26. GEICO also "concluded from the allegations of the Complaint in [the state-court] action, as confirmed by all information provided by the Nadkarni defendants and obtained from the San Francisco Residential Rent Stabilization and Arbitration Board that the Nadkarni defendants' exposure to liability in the [state-court] action did not present any potential liability for "property damage" claims covered by the GEICO policy. Rather, none [of]the allegations or claims raised any factual potential for "property damage" as that term is defined by the GEICO policy.[19]

On December 4, 2018, GEICO declined the defendants' tender of the state complaint for a defense and indemnity.[20] On December 8, 2018, the defendants disputed GEICO's position and asserted that GEICO must accept the tender of defense because the "wrongful eviction" occurred in August 2019 (after the expiration of the 90-day period for either an owner move-in or an offer back to the tenants) and thus was during the policy period.[21]

On January 15, 2019, GEICO responded that it would provide a "defense . . . in the state action via independent counsel subject to a full reservation of rights under the terms of the GEICO [policy] and the law . . . . Among the specific rights reserved by GEICO . . . in the letter were:

> a. The "right to disclaim coverage" for the allegations and claims raised by the *Venegas* action on the grounds that no "personal injury" or "property damage" took place "during the time [the GEICO policy was] in force . . . .";
>
> b. The "right to withdraw from th[e] defense [of the Nadkarni defendants] upon reasonable notice . . . ."; and
>
> c. The "right to seek recovery from [the Nadkarni defendants] for all defense costs incurred in defending [them] in the *Venegas* action."[22]

On January 24, 2019, the defendants proposed that GEICO withdraw its reservation of rights regarding GEICO's defense obligations in exchange for the defendants' "waiver of any right to independent counsel under Civil Code section 2860."[23] GEICO declined the proposal.[24]

---

[19] *Id.* at 5–7 (¶¶ 24–26) & Statements of Occupancy, Ex. C to FAC – ECF No. 7 at 71–73, 75–80, 82–90.

[20] *Id.* at 7 (¶ 27); Letter, Ex. D to FAC – ECF No. 7 at 91–96.

[21] FAC – ECF No. 7 at 7 (¶ 28); Letter, Ex. E. to FAC – ECF No. 7 at 97–100.

[22] FAC – ECF No. 7 at 7–8 (¶ 29); Letter, Ex. F to FAC – ECF No. 7 at 102–109.

[23] FAC – ECF No. 7 at 8 (¶ 30); Email, Ex. G to FAC – ECF No. 7 at 111–112.

[24] FAC – ECF No. 7 at 8 (¶ 30); Email, Ex. G to FAC – ECF No. 7 at 111.

On February 4, 2019, GEICO responded to the defendants' contention that the eviction became unlawful only in August (after the 90-day period expired) and asserted that the "act or offense" covered by the "personal injury" policy provision was the defendants' original "dispossession of the third-party claimants/[tenants] from the premises, which took place prior to the inception of coverage under the GEICO policy [on May 8, 2018]."[25] On February 27, 2019, the defendants responded and "reiterated the same argument made in [their] December 8, 2018 correspondence that the eviction only became 'unlawful' 90 days after the original notice of eviction [meaning, in August 2018, during the policy period]."[26]

### 4. Other Relevant Procedural History

GEICO filed its initial complaint on March 11, 2019 and an amended complaint on April 5, 2019.[27] The defendants moved for judgment on the pleadings on May 14, 2019 and answered the amended complaint on June 21, 2019.[28] All parties consented to magistrate-judge jurisdiction.[29]

## GOVERNING LAW

### 1. Rule 12(c) Motion for Judgment on the Pleadings

"After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog," because the motions are "functionally identical." *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). A Rule 12(c) motion may thus be predicated on wither (1) the lack of a cognizable legal theory or (2)

---

[25] FAC – ECF No. 7 at 8 (¶ 31); Letter, Ex. H to FAC – ECF No. 7 at 115–116.

[26] *Id.* (¶ 32) & Email, Ex. I to FAC – ECF No. 7 at 119–120.

[27] Compl. – ECF No. 1; FAC – ECF No. 7.

[28] Mot. – ECF No. 8; Answer – ECF No. 19. Geico pointed out that the motion for judgment on the pleadings was untimely because the defendants had not answered the complaint. Because the defendants have now answered, the pleadings are "closed," and the court may consider the motion. *See* Fed. R. Civ. P. 12(c).

[29] Consent Forms – ECF Nos. 5, 9.

ORDER – No. 19-cv-01302-LB         7

insufficient facts to support a cognizable legal claim. *See Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). When considering a motion to dismiss under Rule 12(c), the court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard,* 581 F.3d 922, 925 (9th Cir. 2009). "A judgment on the pleadings is proper if, taking all of [plaintiff]'s allegations in its pleadings as true, [defendant] is entitled to judgment as a matter of law." *Compton Unified Sch. Dist. v. Addison,* 598 F.3d 1181, 1185 (9th Cir. 2010).

Although a court generally is confined to the pleadings on a Rule 12(c) motion, "[a] court may, however, consider certain materials — documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice — without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999). The Ninth Circuit has "extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (*citing Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (holding that the district court properly considered documents attached to a motion to dismiss that described the terms of plaintiff's group-health insurance plan, where plaintiff alleged membership in the plan, his claims depended on the conditions described in the documents, and plaintiff never disputed their authenticity).

### 2. The Interpretation of Insurance Agreements

Because the defendants are California residents, and the parties' dispute relates to an insurance policy covering property located in the state, California substantive law applies in this diversity action. *Freeman v. Allstate Life Ins. Co.,* 253 F.3d 533, 536 (9th Cir. 2001). In California, courts apply contract law to interpret insurance policies:

> Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal. 4th 1, 18, 44 Cal. Rptr. 2d 370, 900 P.3d 619 (*Waller*).) "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties. 'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636). Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.*, § 1639). The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" (*id.*, § 1644), controls judicial interpretation. (*Id.*, § 1638.)' [Citations.] A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. [Citation.] But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." (*Id.* At p. 18, 44 Cal. Rptr. 2d 370, 900 P.2d 619.)
>
> Moreover, insurance coverage is ""'interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] . . . exclusionary clauses are interpreted narrowly against the insurer.'"" (*White v. Western Title Ins. Co.* (1985) 40 Cal. 3d 870, 881, 221 Cal. Rptr. 509, 710 P.2d 309.) . . . The burden is on the insured to establish that the claim is within the basic scope of coverage and on the insure to establish that the claim is specifically excluded. (*Aydin Corp. v. First State Ins. Co.*(1998) 18 Cal. 4th 1183, 1188, 77 Cal. Rptr. 2d 537, 959 P.2d 1213.)

*MacKinnon v. Truck Insurance Exchange*, 31 Cal. 4th 635, 647–48 (Cal. 2003).

### 3. An Insurer's Duty to Defend

An insurer's duty to defend is broader than its duty to indemnify:

> An insurer must defend its insured against claims that create a *potential* for indemnity under the policy. (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal. 4th 287, 295, 24 Cal. Rptr. 2d 467, 861 P.2d 1153 (*Montrose*); *Gray v. Zurich Insurance Co.* (1966) 65 Cal. 2d 273, 275, 54 Cal. Rptr. 104, 419 P.2d 168 (*Gray*).) The duty to defend is broader than the duty to indemnify, and it may apply even in an action where no damages are ultimately awarded. (*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal. 4th 1076, 1081, 17 Cal. Rprt. 2d 210, 846 P.2d 792.)
>
> Determination of the duty to defend depends, in the first instance, on comparison between the allegations of the complaint and the terms of the policy. (*Montrose, supra,* 6 Cal. 4th 287, 295, 24 Cal. Rptr. 2d 467, 861 P.2d 1153.) But the duty also exists where extrinsic facts known to the insurer suggest that the claim may be covered. (*Ibid.*) Moreover, that the precise causes of action pled by the third-party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability. (*Gray, supra,* 65 Cal. 2d 263,

275–276, 54 Cal. Rptr. 104, 419 P.2d 168; *CNA Casualty of California v. Seabord Surety Co.* (1986) 176 Cal. App. 3d 598, 610–611, 222 Cal. Rptr. 276.)

The defense duty arises upon tender of a potentially covered claim and lasts until the underlying lawsuit is concluded, or until it has been shown that there is no potential for coverage. (*Montrose, supra,* 6 Cal. 4th 287, 295, 24 Cal. Rptr. 2d 467, 861 P.2d 1153.) When the duty, having arisen, is extinguished by a showing that no claim can in fact be covered, "it is extinguished only prospectively and not retroactively." (*Buss v. Superior Court* (1997) 16 Cal. 4th 35, 46, 65 Cal. Rptr. 2d 366, 939 P.2d 766 (*Buss*); *see also Aeroget-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal. 4th 38, 59, 70 Cal. Rptr. 2d 118, 947 P.2d 909.

From these premises, the following may be stated: If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage. On the other hand, if, as a matter of law, neither the complaint or the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance.

*Scottsdale Insurance Company v. MV Transportation*, 36 Cal. 4th 643, 654–55 (Cal. 2005).

## ANALYSIS

The defendants move for judgment on the pleadings on the ground that the "wrongful eviction" creates a duty to defend.[30] The parties do not dispute that GEICO has a duty to defend a wrongful eviction that occurred during the policy period, which here began May 8, 2018. Instead, they dispute whether the wrongful eviction occurred in the policy period (meaning, on or after May 8, 2019). The defendants contend that the eviction became wrongful in July 2018 (after the expiration of the 90-day period for an owner move-in or, alternatively, a tender of the property back to the tenants) and that in any event, the tenants were not required to surrender the property until May 12, 2018 (within the policy period).[31] GEICO contends that the "wrongful eviction" occurred when the defendants terminated the tenancy in March 2018, and certainly by the time the tenants vacated the property in April 2018, and the defendants regained possession of it on May 1,

---

[30] Mot. – ECF No. 8 at 5.

[31] *Id.* at 15; Reply – ECF No. 20 at 3.

ORDER – No. 19-cv-01302-LB  10

2019.[32] The court denies the defendants' motion because the defendants terminated the tenancy before the policy's effective date.

The policy covers "occurrences" during the policy period.[33] It is an offense-based coverage, and the event "triggering coverage" for covered "offenses" (such as the wrongful eviction here) "is the commission of the specified offense during the policy period."[34] *Mez Indus., Inc. v. Pac. Nat. Ins. Co.,* 76 Cal. App. 4th 856, 865 (1999); *Street Surfing, LLC v. Great Am. E & S Ins. Co.*, 776 F.3d 603, 610 (9th Cir. 2014). The offense occurs on the date it commences, even if the offense is a continuing offense. *Zurich Ins. Co. v. Peterson*, 188 Cal. App. 3d 438, 444–49 (1986); *Harbor Ins. Co. v. Cent. Nat'l Ins. Co.*, 165 Cal. App. 3d 1029, 1040 (1985).

Here, as GEICO argues, at least three dates are relevant: March 13, 2018 (when the defendants served the notice of termination of tenancy); April 21, 2018 (when the plaintiffs vacated the property pursuant to the notice); and May 1, 2018 (when the defendants recovered possession of the property).[35] All dates have legal significance, and all occurred before the policy's effective date. For example, cases hold that wrongful eviction occurs when the landlord serves the eviction notice. *Silve v. Riley*, 15 Cal. App. 4th 23, 26 (1993); *Menefee v. Ostawari,* 228 Cal. App. 3d 239, 246 (1991) ("Appellant was damaged at the time of service of the 30-day notice in that respondents interfered with his continued right of possession at that time"). In insurance-coverage cases, courts emphasize the actual departure of the tenant pursuant to an eviction notice. *Cunningham v. Universal Underwriters*, 98 Cal. App. 4th 1141, 1149 (2002) (physical dispossession is the *sine qua non* of eviction); *see Swain v. California Casualty Insurance Company,* 99 Cal. App. 4th 1, 10 (2002) (wrongful eviction is a discrete tort that consists in "the formal termination of a legal relationship).

---

[32] Opp. – ECF No. 18 at 18–19.

[33] *Id.* at 13.

[34] *Id.*

[35] *Id.* at 18–19.

The defendants nonetheless argue that the eviction was at least ongoing until the expiration of the 90-day period (to take possession or tender it back to the tenants).[36] But that provision of the San Francisco Rent Ordinance is a "safe harbor" provision that does not render a previous eviction "wrongful" and instead is evidence about whether the landlord was acting in good faith at the time it served the eviction notice. *See id.* at 9 (landlords evicted tenants to allow a family move-in but later rented the property to another tenant; court rejected defendants' argument that the eviction "only became illegal after the fact when the [defendants] failed to move into the premises themselves" and held that the insured's conduct, whether lawful or not, inflict[ed] an obvious harm to an important interest — the claimant's interest in a leasehold, a place of shelter, [or] a home . . . .").

The defendants also suggest that the state complaint's references to "personal injury" and other enumerated torts extend the eviction into the policy period.[37] In their reply, they elaborate:

> The policy covers damages that *arise out of* property damage, mental or bodily injury, shock, sickness, disease or death, or injury that arises out of false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution, libel, slander, defamation of character or invasion of the rights of privacy (so long as not thereafter excluded). By grouping all of these potential liability claims together, GEICO purposefully declined to separate them, and provide a separate trigger for each.[38]

They cite no authority to support the argument. Again, coverage is based on when the "offense is committed." Here, at minimum, that is when the tenants departed or when the defendants regained possession of the property. *Cunningham*, 98 Cal. App. 4th at 1149. The same is true for the other enumerated torts. For example, for the tort of malicious prosecution, insurance-coverage cases hold that –– for purposes of insurance policies that measure coverage from the time when the

---

[36] Mot. – ECF No. 8 at 13.

[37] *Id.* at 15−16. GEICO points to other allegations in the state complaint about "property loss" and "property damage" and argues that they are conclusory, do not relate to the complaint's core allegations about wrongful eviction, and do not trigger a duty to defend under the policy. Opp. – ECF No. 18 at 13 n.5.

[38] Reply – ECF No. 20 at 2.

"offense is committed" –– the tort of malicious prosecution occurs when the complaint is filed. *Zurich,* 188 Cal. App. 3d at 446–47.

The defendants also argue that under the 60-day notice, the tenants were not required to vacate the premises until May 12, 2018, which was in the policy period.[39] That argument does not change the outcome for the same reason: the offense was committed before the policy period, meaning, when the tenants left and when the defendants regained possession. These events happened before May 8, 2018, the effective date of the GEICO policy.

## CONCLUSION

The court denies the defendants' motion for judgment on the pleadings. Under the circumstances, and on this record, the court denies GEICO's request that the court enter judgment in its favor. This order is without prejudice to GEICO's raising the arguments in a motion for summary judgment.

**IT IS SO ORDERED.**

Dated: July 11, 2019

LAUREL BEELER
United States Magistrate Judge

---

[39] *See* Reply – ECF No. 20 at 3.