UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| GOVERNMENT EMPLOYEES INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ANSHUMAN S. NADKARNI and RENUKA NADKARNI,<br><br>Defendants. | Case No. 19-cv-01302-LB<br><br>**ORDER GRANTING GEICO'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: ECF No. 34 |

## INTRODUCTION

The plaintiff, Government Employees Insurance Company ("GEICO"), filed this declaratory-relief action to determine whether its umbrella insurance policy — issued to the defendants Anshuman and Renuka Nadkarni, who are former landlords defending a state-court wrongful-eviction lawsuit brought by their former tenants — requires it to defend and indemnify the defendants.[1] The policy is an occurrence policy.[2] The complaint has three claims: (1) a claim for declaratory relief regarding GEICO's duty to defend; (2) a claim for declaratory relief regarding

---

[1] First Amended Compl. ("FAC") – ECF No. 7. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Policy, Ex. A to Trumpower Decl. – ECF No. 35-2 at 5–21.

ORDER – No. 19-cv-01302-LB

GEICO's duty to indemnify; and (3) a claim for reimbursement.[3] GEICO moved for summary judgment on claim one, its duty to defend, on the ground that the wrongful eviction took place outside of the policy period.[4] The defendants counter that GEICO cannot prove that the eviction took place before the policy period, the provable facts are that the eviction was during a period that overlapped the policy period, and GEICO thus has a duty to defend under California law (a duty broader than the duty to indemnify) because there is a possibility that the policy covers a claim.[5] Because the eviction occurrence took place before the policy period, the court grants GEICO's motion for partial summary judgment on claim one.

## STATEMENT

**1. The Eviction**

The defendants bought a residential property in February 2017 that was rented to tenants, who had lived there since 2008 and who had a written lease with the previous owner.[6] The lease created a month-to-month tenancy that required rent to be paid on the first of each month and allowed termination by either party with 30 days' written notice.[7] According to the defendants, they told the tenants in September 2017 that they wanted to move into the property in the summer of 2018.[8] On March 13, 2018, they served the tenants with a "60 Day Notice of Termination of Tenancy."[9] On April 2, 2018, tenant Rosa Venegas sent the defendants' lawyer a message asking for additional relocation expenses for co-tenant Epifanio Venegas, who was elderly.[10] On April 21,

---

[3] FAC – ECF No. 7 at 9–13 (¶¶ 38–53).

[4] Mot. − ECF No. 34 at 7.

[5] Opp'n − ECF No. 35 at 6.

[6] Amended State Compl., Ex. J to FAC – ECF No. 7 at 122–23 (¶¶ 1, 5); Lease, Ex. J to Wagoner Decl. – ECF No, 34-1 at 128–29.

[7] Lease, Ex. J to Wagoner Decl. – ECF No. 34-1 at 128–29.

[8] Renuka Nadkarni Email, Ex. B to Trumpower Decl. – ECF No. 34-2 at 27.

[9] Notice, Ex. L to Wagoner Decl. − ECF No. 34-1 at 133–47.

[10] Venegas Email, Ex. O to Wagoner Decl. – ECF No. 34-1 at 162–63.

2018, the defendants emailed her to schedule a walk-through of the property the next day.[11] The former tenants apparently vacated the unit on April 21, 2018.[12] On April 29, 2018, the defendants met with the tenants at the property, the tenants surrendered their keys, and the defendants gave the tenants their security deposit and the additional relocation expenses.[13] The tenants paid rent for April but did not pay rent thereafter.[14] They left personal property at the property, and on or about May 13, 2018, the defendants instructed their contractor — without contacting the tenants first — to dispose of the personal property.[15]

The defendants contend that the tenants had "access" to the property for the first two weeks in May, despite the surrender of keys and the lack of rent payment.[16] Ms. Nadkarni said that based on the 60-day notice served March 13, 2018, the defendants believed that the tenants had until May 12, 2018 to use the property, and that — even though the tenants surrendered their keys — "we believed that they had other copies of the keys. We were planning to change the locks eventually."[17] When the defendants left the property on April 29, 2018, the tenants were still in the unit moving their things, and there were "items in the closets, appliances in the garage, and personal property in a locked storage in the garage."[18] The defendants returned to the unit after the 60-day period expired and found "items left in the closets" and personal property in the locked

---

[11] Anshuman Nadkarni Email – Ex. O to Wagoner Decl. – ECF No. 34-1 at 162.

[12] Amended State Compl., Ex. J to FAC – ECF No. 7 at 122 (¶ 1 ), 124 (¶ 15); *see* Epifanio Venegas's Responses to Defendants' Form Interrogatories, Ex. C to Wagoner Reply Decl. – ECF No. 36-1 at 66–67 (tenant did not mention leaving any property at the unit after leaving); Eva Pilar Venegas's Responses to Defendants' Form Interrogatories, Ex. D to Wagoner Reply Decl. – ECF No. 36-1 at 102–103 (same); Rosa Maria Venegas's Responses to Defendants' Form Interrogatories, Ex. D to Wagoner Reply Decl. – ECF No. 36-1 at 136–137 (same).

[13] Renuka Nadkarni Dep., Ex. I to Wagoner Decl. – ECF No. 34-1 at 88 (p. 26:20–25), 89 (p. 27:15–20), 115 (P. 53:9–15); Response to Interrogatory 6, Exs. D & E to Wagoner Decl. – ECF No. 34-1 at 21, 30.

[14] Check, Ex. N to Wagoner Decl. – ECF No. 34-1 at 160; Response to Interrogatory 3, Exs. D & E to Wagoner Decl. – ECF No. 34-1 at 20, 29

[15] Renuka Nadkani Dep., Ex. I to Wagoner Decl. – ECF No. 34-1 at 90–96 (pp. 33:20–34:10); Response to Interrogatories, Exs. D & E to Wagoner Decl. – ECF No. 34-1 at 21–22, 30–31.

[16] Renuka Nadkani Dep., Ex. I to Wagoner Decl. – ECF No. 34-1 at 95 (p. 33:16–17).

[17] Response to Interrogatory 6, Exs. D & E to Wagoner Decl. – ECF No. 34-1 at 21, 30.

[18] *Id.*

storage unit of the garage."[19] They "had been told" not to disturb or remove the personal property until after the 60 days, but once that period expired, they told the contractor to throw away the personal property.[20]

In statements filed under penalty of perjury with the San Francisco Rent Board on June 11, 2018 and November 8, 2018, the defendants said that they obtained possession of the property on May 1, 2018.[21] Ms. Nadkarni admitted that they had completed their owner move-in when they bought the GEICO policy on May 7, 2018.[22] More specifically, when asked at her deposition why she bought the GEICO policy at issue here, Ms. Nadkarni said that she wanted coverage for contractor issues "or any kind of eviction issues."[23] She did not anticipate a wrongful-eviction lawsuit from the tenants on the purchase date of the policy because the defendants "had successfully completed our owner move-in," and they selected the insurance coverage as landlords (presumably generally) because it had wrongful-eviction coverage.[24]

## 2. The State Wrongful-Eviction Lawsuit

The tenants sued the defendants for wrongful eviction on November 7, 2018.[25] The operative state complaint was filed on February 28, 2019 and alleges that (1) the defendants terminated the lease on the ground that the defendants would move into the property and (2) they did not move in within three months (and did not thereafter stay for three years or offer it back to the tenants).[26] An "owner move-in" was the legal ground that allowed the termination of the tenancy.[27] The

---

[19] *Id.* at 21–22, 30–31; *see also* Renuka Nadkani Dep., Ex. I to Wagoner Decl. – ECF No. 34-1 at 95 (p. 33:25) ("there was a lot of trash [] in the unit").

[20] Response to Interrogatory 6, Exs. D & E to Wagoner Decl. – ECF No. 34-1 at 21–22, 30–31.

[21] Statements, Exs. E, F, & G to Trumpower Decl. – ECF No. 34-2 at 127–128, 131–132.

[22] Renuka Nadkarni Dep., Ex. I to Wagoner Decl. – ECF No. 34-1 at 109 (p. 47:3–7).

[23] *Id.* at 107 (p. 45:11–12).

[24] *Id.* at 107 (p. 45:21–22), 108 (p. 46:11–25), 109 (p. 47:6–7).

[25] State Compl., Ex. B to FAC – ECF No. 7 at 35.

[26] Amended State Compl., Ex. J to FAC – ECF No. 7 at 124 (¶¶ 15–17).

[27] *See id.*

ORDER – No. 19-cv-01302-LB                4

complaint has the following claims: (1) negligence (by demanding that the tenants vacate the property for an owner move-in and failing to move in) (resulting in serious emotional distress, property damage, property loss, loss of a rent-controlled apartment, and moving costs); (2) wrongful eviction in violation of the San Francisco Rent Ordinance (resulting in the same damages); (3) breach of the covenant of quiet enjoyment (resulting in the loss of a rent-controlled apartment, property damage, property loss, moving costs, and attorney's fees and costs); (4) intentional infliction of emotional distress (resulting in severe emotional distress, mental injury, moving costs, and lose of use and enjoyment of the rental home); (5) a violation of section 37.11A of the San Francisco Rent ordinance by not filing required documents (such as a statement of occupancy within 90 days and updated statements every 90 days thereafter, the notice to vacate, and the notice of termination of tenancy) and by failing to move into the property (resulting in loss of enjoyment of a rent-controlled unit, property damage, property loss, mental injury, emotional distress, statutory damages and penalties, attorney's fees, and litigation costs); (6) unfair business practices for (essentially) the wrongful eviction and the failure to file the documents in violation of the Rent Ordinance, resulting in illegal profits; and (8) as to one former tenant, financial elder abuse warranting punitive damages.[28]

The property damage specified in the complaint is the value of the personal belongings that the tenants left behind (worth approximately $4,500).[29] In the underlying wrongful-eviction suit, the tenants do not mention leaving any property behind.[30] Their property damages, rather, stem from having to give away various possessions and the costs associated with their move.[31]

---

[28] *Id.* at 125−130 (¶¶ 24−74).

[29] Responses to Interrogatory 5, Exs. D & E to Wagoner Decl. – ECF No. 34-1 at 20, 29.

[30] Epifanio Venegas's Responses to Defendants' Form Interrogatories, Ex. C to Wagoner Reply Decl. – ECF No. 36-1 at 66–67 (tenant did not mention leaving any property at the unit after leaving); Eva Pilar Venegas's Responses to Defendants' Form Interrogatories, Ex. D to Wagoner Reply Decl. – ECF No. 36-1 at 102–103 (same); Rosa Maria Venegas's Responses to Defendants' Form Interrogatories, Ex. D to Wagoner Reply Decl. – ECF No. 36-1 at 136–137 (same).

[31] *Id.*

**3. The Insurance Policy**

Before May 8, 2018, the defendants' insurance policy did not cover wrongful evictions.[32] On May 7, 2019, the defendants purchased a policy that did: GEICO Personal Umbrella Policy number P8345980 for the policy period May 8, 2018 to May 8, 2019 (hereinafter the "GEICO policy" or "policy").[33] "The policy was cancelled effective December 28, 2018."[34]

The policy was an occurrence policy: "*We* pay *damages* on behalf of an *insured* arising out of an *occurrence*, subject to the terms and conditions of this policy."[35]

The policy defines "damages" (in relevant part) as the "the total of: (a) damages an *insured*' must pay (1) legally; or (2) by agreement with *our* written consent; because of *personal injury* or *property damage* covered by this policy."[36]

The policy defines "occurrence" as "an accident or event, including a continuous or repeated exposure to conditions which results in *personal injury* or *property damage* neither expected or intended by an *insured*.[37]

The policy defines "personal injury" in relevant part as "(b) injury arising out of: (i) false arrest, false imprisonment, wrongful eviction, wrongful detention or malicious prosecution."[38]

The policy defines "property damage" as "physical injury or destruction of tangible property. This includes the loss of use caused by the injury or destruction. *Property damage* does not include the loss of money, notes, stock, bonds, or similar instruments, computer data or intellectual property."[39]

---

[32] Policy, Ex. A to Trumpower Decl. – ECF No. 35-2 at 5–21.

[33] *Id.* at 6.

[34] Trumpower Decl. – ECF No. 34-2 at 2 (¶ 14).

[35] Policy, Ex. A to Trumpower Decl. – ECF No. 35-2 at 13 (Pt. II). The bolding and italicizations in the excerpts from the policy are from the original.

[36] *Id.* at 11 (Pt. I, § 4).

[37] *Id.* at 12 (Pt. I, § 9).

[38] *Id.* (Pt. I, § 10).

[39] *Id.* (Pt. I, § 15).

The policy excludes from coverage damages arising from "Acts committed by any *insured*, or at any *insured's* direction, with intent to cause *personal injury* or *property damage*."[40]

The "Conditions" section of the policy states, "This policy applies to *personal injury* or *property damage* which takes place anywhere during the time this policy is in force, provided that suit is brought in the United States, its territories and possessions, or Canada."[41]

### 4. Tender to GEICO

On November 12, 2018, the defendants tendered the tenants' unlawful-eviction lawsuit to GEICO for a defense and indemnity under the GEICO policy.[42] On December 4, 2018, GEICO declined the defendants' tender of the state complaint for a defense and indemnity.[43] On January 15, 2019, GEICO said that it would provide a defense to the state lawsuit through independent counsel with a full reservation rights (as follows):

a. The "right to disclaim coverage" for the allegations and claims raised by the *Venegas* action on the grounds that no "personal injury" or "property damage" took place "during the time [the GEICO policy was] in force . . . .";

d. The "right to withdraw from th[e] defense [of the Nadkarni defendants] upon reasonable notice . . . ."; and

e. The "right to seek recovery from [the Nadkarni defendants] for all defense costs incurred in defending [them] in the *Venegas* action."[44]

### 5. Other Relevant Procedural History

GEICO filed its initial complaint on March 11, 2019 and an amended complaint on April 5, 2019.[45] The defendants moved for judgment on the pleadings on the ground that GEICO had a

---

[40] *Id.* at 13 (Pt. III, § 4).

[41] *Id.* at 17 (Pt. VI, § 8).

[42] Renuka Nadkarni Email, Ex. B to Trumpower Decl. – ECF No. 34-2 at 29.

[43] Letter, Ex. D to FAC – ECF No. 7 at 91–96.

[44] Letter, Ex. F to FAC – ECF No. 7 at 102–109.

[45] Compl. – ECF No. 1; FAC – ECF No. 7.

duty to defend and indemnify them as a matter of law.[46] In its opposition, GEICO asked for judgment on the ground that the eviction happened before the policy period began.[47] The court denied the defendants' motion on the ground that the facts — as pled — showed that the eviction happened before the policy period.[48] The court denied GEICO's motion for judgment without prejudice to GEICO's moving for summary judgment after discovery.[49] GEICO later moved for summary judgment.[50] The court held a hearing on November 21, 2019.

## GOVERNING LAW

### 1. Summary-Judgment Standard

The court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is enough evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248–49.

The party moving for summary judgment has the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.

---

[46] Mot. – ECF No. 8.

[47] Opp'n – ECF No. 18.

[48] Order – ECF No. 26 at 10–14.

[49] *Id.* at 13.

[50] Mot. – ECF No. 34.

2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex*, 477 U.S. at 325).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *Nissan Fire & Marine*, 210 F.3d at 1103. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *Devereaux*, 263 F.3d at 1076. If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## 2. The Interpretation of Insurance Agreements

Because the defendants are California residents, and the parties' dispute relates to an insurance policy covering property located in the state, California substantive law applies in this diversity action. *Freeman v. Allstate Life Ins. Co.,* 253 F.3d 533, 536 (9th Cir. 2001). In California, courts apply contract law to interpret insurance policies:

> Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal. 4th 1, 18, 44 Cal. Rptr. 2d 370, 900 P.3d 619 (*Waller*).) The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the mutual intention of the parties. Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636). Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.*, § 1639). The clear and explicit meaning of these provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage (*id.*, § 1644), controls judicial interpretation. (*Id.*, § 1638.) [Citations.] A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. [Citation.] But language in a contract must be interpreted as a whole, and in the circumstances of the case,

and cannot be found to be ambiguous in the abstract. (*Id.* at p. 18, 44 Cal. Rptr. 2d 370, 900 P.2d 619.)

Moreover, insurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] . . . exclusionary clauses are interpreted narrowly against the insurer. (*White v. Western Title Ins. Co.* (1985) 40 Cal. 3d 870, 881, 221 Cal. Rptr. 509, 710 P.2d 309.) . . . The burden is on the insured to establish that the claim is within the basic scope of coverage and on the insure to establish that the claim is specifically excluded. (*Aydin Corp. v. First State Ins. Co.* (1998) 18 Cal. 4th 1183, 1188, 77 Cal. Rptr. 2d 537, 959 P.2d 1213.)

*MacKinnon v. Truck Ins. Exchange*, 31 Cal. 4th 635, 647–48 (2003) (internal quotations omitted).

3. **An Insurer's Duty to Defend**

An insurer's duty to defend is broader than its duty to indemnify:

An insurer must defend its insured against claims that create a *potential* for indemnity under the policy. (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal. 4th 287, 295, 24 Cal. Rptr. 2d 467, 861 P.2d 1153 (*Montrose*); *Gray v. Zurich Insurance Co.* (1966) 65 Cal. 2d 273, 275, 54 Cal. Rptr. 104, 419 P.2d 168 (*Gray*).) The duty to defend is broader than the duty to indemnify, and it may apply even in an action where no damages are ultimately awarded. (*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal. 4th 1076, 1081, 17 Cal. Rprt. 2d 210, 846 P.2d 792.)

Determination of the duty to defend depends, in the first instance, on comparison between the allegations of the complaint and the terms of the policy. (*Montrose, supra,* 6 Cal. 4th 287, 295, 24 Cal. Rptr. 2d 467, 861 P.2d 1153.) But the duty also exists where extrinsic facts known to the insurer suggest that the claim may be covered. (*Ibid.*) Moreover, that the precise causes of action pled by the third-party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability. (*Gray, supra,* 65 Cal. 2d 263, 275–276, 54 Cal. Rptr. 104, 419 P.2d 168; *CNA Casualty of California v. Seaboard Surety Co.* (1986) 176 Cal. App. 3d 598, 610–611, 222 Cal. Rptr. 276.)

The defense duty arises upon tender of a potentially covered claim and lasts until the underlying lawsuit is concluded, or until it has been shown that there is no potential for coverage. (*Montrose, supra,* 6 Cal. 4th 287, 295, 24 Cal. Rptr. 2d 467, 861 P.2d 1153.) When the duty, having arisen, is extinguished by a showing that no claim can in fact be covered, it is extinguished only prospectively and not retroactively. (*Buss v. Superior Court* (1997) 16 Cal. 4th 35, 46, 65 Cal. Rptr. 2d 366, 939 P.2d 766 (*Buss*); *see also Aeroget-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal. 4th 38, 59, 70 Cal. Rptr. 2d 118, 947 P.2d 909.

From these premises, the following may be stated: If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential

coverage. On the other hand, if, as a matter of law, neither the complaint or the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance.

*Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 654–55 (2005) (internal quotations omitted).

**ANALYSIS**

It is undisputed that the operative policy covers wrongful eviction. The parties dispute whether the eviction occurred during the policy period (meaning, on or after May 8, 2019). GEICO moves for summary judgment on claim one (its duty to defend) on two grounds: (1) the eviction happened before May 8, 2018, and (2) the conversion of the tenants' personal property is not covered by the policy.[51] The defendants counter that the eviction took place during a period that overlaps the policy period, and GEICO thus has a duty to defend under California law.[52] Because the court concludes that the eviction occurrence took place before the policy period, the court grants GEICO's motion for partial summary judgment on claim one.

1. **Eviction**

The policy covers "occurrences" during the policy period.[53] It is offense-based coverage, and the event "triggering coverage" for covered offenses (here, the wrongful eviction) "is the commission of the specified offense during the policy period." *Mez Indus., Inc. v. Pac. Nat'l Ins. Co.*, 76 Cal. App. 4th 856, 865 (1999); *see Street Surfing, LLC v. Great Am. E & S Ins. Co.*, 776 F.3d 603, 610 (9th Cir. 2014). Wrongful eviction is a discrete tort, and the offense is the injury. *Swain v. California Cas. Ins. Co.*, 99 Cal. App. 4th 1, 10 (2002); *Menefee v. Ostawari*, 228 Cal. App. 3d 239, 246 (1991). The parties agree that "[t]he events constituting and completing an eviction under California law are: (i) the owners' service of an eviction notice; (ii) the tenants'

---

[51] Mot. – ECF No. 34 at 7.

[52] Opp'n − ECF No. 35 at 6, 15.

[53] Policy, Ex. A to Trumpower Decl. – ECF No. 35-2 at 5–21.

departure pursuant to the notice; and (iii) the owners' repossession of the premises after the tenants' departure."[54]

All relevant dates here occurred before the policy period: (1) March 13, 2018 (when the defendants served the notice of termination of tenancy; (2) April 21, 2018 (when the tenants vacated the property; (3) April 29, 2018 (when the tenants surrendered their keys and the defendants took possession of the property); and (4) May 1, 2018, when the defendants regained possession of the property. Also, the tenants paid rent for April and did not pay any rent thereafter.

As the court held previously, these dates precede the policy period and have legal significance (meaning, they are dates that define the occurrence). For example, cases hold that a wrongful eviction occurs when the landlord serves the eviction notice. *Sylve v. Riley*, 15 Cal. App. 4th 23, 26 (1993); *Menefee* 228 Cal. App. 3d at 246 ("Appellant was damaged at the time of service of the 30-day notice in that respondents interfered with his continued right of possession at that time").[55] In insurance-coverage cases, courts emphasize that the relevant date is the actual departure of the tenant following an eviction notice. *Cunningham v. Universal Underwriters*, 98 Cal. App. 4th 1141, 1149 (2002) (physical dispossession is the *sine qua non* of eviction); *see Swain*, 99 Cal. App. 4th at 10 (wrongful eviction is a discrete tort that consists of "the formal termination of a legal relationship"). In malicious-prosecution cases, which (like eviction cases) are ongoing, insurance-coverage cases hold that — for purposes of insurance policies that measure coverage from the time when the "offense is committed" — the tort of malicious prosecution occurs when the complaint is filed. *Zurich Ins. Co. v. Peterson*, 188 Cal. App. 3d 438, 446–47 (1986).

In sum, the defendants evicted the tenants before the policy's effective date of May 8, 2019.

The defendants nevertheless contend that the tenants had control of the property during the first two weeks in May, as shown by their storage of personal property there until May 13, 2018

---

[54] Mot. – ECF No. 34 at 7; Opp'n – ECF No. 35 at 6.

[55] The defendants distinguish *Menefee* on the ground that the notice there was invalid because it identified a basis for eviction that was unlawful. Opp'n – ECF No. 35 at 26. The court does not reach the issue because in the end, the defendants recovered possession of the property by May 1, 2018, before the policy period began.

(the day after the 60-day notice-to-quit period expired and the date that the defendants instructed their contractor to throw away the personal property).[56] And, they say, the tenants' claim for the value of the property bolsters that conclusion.[57] They dismiss as irrelevant the defendants' failure to demand rent for May and the defendants' subjective belief (as evidenced in their statements to the San Francisco Rent Board) that they recovered possession of the property by May 1, 2018.[58] What is relevant, they conclude, is the tenants' legal possession through May 12, 2018 (the date that their legal right to remain ended) and their possession of the property while their personal property remained there (meaning, May 13, 2018, when the defendants threw it away).[59] Another way that the defendants phrase the issue is, the evidence does not establish the exact date that the tenants left and shows only that it was at some point between April 28, 2018 and May 13, 2018.[60] The defendants contend that because GEICO cannot establish the precise date that the tenants surrendered the property (or the date that the defendants repossessed it), and instead can establish only that it was in this April 28–May 13 period, it cannot prevail on its summary-judgment motion, and thus there is the potential for coverage.[61]

On these facts, the court does not agree. All relevant acts happened before the defendants bought the policy. *Cunningham*, 98 Cal. App. 4th at 1149; *see* Order – ECF No. 26 at 12–13. Particularly, the defendants admitted at deposition and in statements to the Rent Board that they repossessed the property before they purchased the policy on May 7, 2018.[62]

---

[56] *Id.* at 9.

[57] *Id.*

[58] *Id.* at 14–15.

[59] *Id.*

[60] *Id.* at 10.

[61] *Id.* at 6, 10.

[62] Statements, Exs. E, F, & G to Trumpower Decl. – ECF No. 34-2 at 127–128, 131–132 (under penalty of perjury, the defendants said that they obtained possession of the property on May 1, 2018); Renuka Nadkarni Dep., Ex. I to Wagoner Decl. – ECF No. 34-1 at 109 (p. 47:3–7) (admitted that the defendants had completed their owner move-in when they bought the GEICO policy on May 7, 2018).

The defendants cite two cases to support the argument that the tenants retained possession of the property. *See Levy v. Henderson*, 31 Cal. App. 789 (1916);[63] *Anheuser-Busch Brewing Assoc. v. Am. Products Co.*, 59 Cal. App. 718 (1922),[64] Those cases are inapposite. In *Levy*, a commercial tenant refused to pay rent. 31 Cal. App. at 789–90. The court affirmed the trial court's judgment in favor of the landlord for restitution for missed rent payments. *Id.* at 792. *Anheuser-Bush* involved a commercial tenant's unilateral attempt to terminate the lease by surrendering the keys, abandoning the property, and stopping rent payments, and a landlord who demanded rent. *Id.* at 721–22. The court held that the landlord was entitled to demand rent. *Id.* These cases did not involve residential tenants or evictions and are not obviously relevant to an eviction where the undisputed facts show that the owner regained possession of the property by May 1, 2018 (and did not in any event demand rent).

Of course, the defendants are trying to show the potential for a claim for coverage.[65] The defendants' point is that GEICO has a broad duty to defend when there is the "possibility that a claim may be covered by the policy."[66] To trigger the duty to defend, there need not be anything other than a bare "potential" or "possibility" of coverage.[67] But this argument turns on the defendants' view that there is a possibility of coverage. At least on the wrongful-eviction claim, there is not. The "occurrence" of the eviction was demonstrably before the policy period.

The defendants also argue that the policy is an umbrella policy, and umbrella policies often have broader coverage than the primary policy.[68] The wrongful-eviction lawsuit in part is based on the defendants' failure to move in to the property within 90 days of recovering possession and

---

[63] *Id.* at 11.

[64] *Id.* at 12.

[65] *Id.* at 15.

[66] *Id.* at 16 (quoting *Anthem Elecs. Inc. v. Pac. Emprs. Ins. Co.*, 302 F.3d 1049, 1056 (9th Cir. 2002) (citing *Montrose Chem. Corp. v. Superior Court*, 6 Cal 4th 287, 304 (1993)).

[67] *Id.* at 12 (citing and quoting *Montrose*, 6 Cal. 4th at 300).

[68] *Id.* at 20 (also making the related point that ambiguities in the policy are to be resolved against the insurer) (citations omitted).

ORDER – No. 19-cv-01302-LB              14

remain there for 36 months.[69] This "owner move-in" was the legal basis for the eviction, and the defendants argues that the "possibility of coverage" exists because coverage can be implicated up to the time that liability has been established (here, at 90 days or 36 months).[70] And, the defendants point out, the wrongful-eviction lawsuit was filed within the policy period.[71] At least, the defendants contend, this is an ambiguity that triggers a duty to defend.[72]

The court disagrees. This is an occurrence policy, and (as discussed above) the eviction occurrence demonstrably was before the defendants bought the policy. Thus, the defendants' argument does not alter the court's conclusion that there is no possibility of coverage and thus no duty to defend. Moreover, as the court held previously, the 90-day period under the San Francisco Rent Ordinance is a "safe harbor" provision that does not render a previous eviction unlawful and instead is evidence about whether the landlord was acting in good faith when it served the eviction notice. *See Swain*, 99 Cal. App. 4th at 9.[73]

### 2. Damages for Destruction of Tenants' Personal Property

GEICO also moves for partial summary judgment on the ground that claims for conversion in any event are not covered by the policy because they are not claims for "property damage" as defined by the policy.[74] The defendants did not dispute this argument and instead predicate their opposition on the argument that the eviction occurrence was in the policy period.[75]

---

[69] *Id.* at 22–23.

[70] *Id.* at 24 (citing and quoting *Montrose*, 6 Cal 4th at 692–93); *see id.* at 27 (discussing requirement under the Rent Code that the landlords must intend to occupy the property for 36 months and must file annual notices that they are in possession for up to five years) (citing S.F. Admin Code § 37.9(a)(8)(i) & (viii)).

[71] *Id.* at 24.

[72] *Id.*

[73] *See* Order – ECF No. 26 at 12.

[74] Mot. – ECF No. 34 at 7.

[75] The defendants confirmed this point at the November 21 hearing.

## CONCLUSION

The court grants GEICO's motion for summary judgment on claim one and holds that as a matter of law, GEICO had no duty to defend here. This disposes of ECF No. 34

.**IT IS SO ORDERED.**

Dated: November 22, 2019

LAUREL BEELER
United States Magistrate Judge